Aghavni V. Kasparian, SBN 204136
Darrell M. Padgette, SBN 199382
**KP LAW**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
(213) 223-2110 Tel.
(213) 986-3121 Fax
Email: akasparian@kplitigators.com
Email: dpadgette@kplitigators.com

Attorneys for Plaintiff
**NOEL COGBURN**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL COGBURN, an Individual; | Case No. |
| Plaintiff, | Judge: |
| vs. | **COMPLAINT FOR:** |
| SUNBEAM PRODUCTS, INC., DBA JARDEN CONSUMER SOLUTIONS, a Corporation; WALMART INC., a Corporation, | 1) **NEGLIGENCE**<br>2) **STRICT LIABILITY**<br>3) **BREACH OF IMPLIED WARRANTY** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMES NOW the plaintiff NOEL COGBURN ("COGBURN" or "PLAINTIFF") for his complaint against the SUNBEAM PRODUCTS, INC., DBA JARDEN CONSUMER SOLUTIONS ("SUNBEAM") and WALMART INC. ("WALMART") (collectively referred to as "DEFENDANTS"), alleges and complains as follows:

///

## THE PARTIES

1. At all times herein mentioned, PLAINTIFF is and was a United States Citizen with his principal and permanent residence in City of Oroville, within the Eastern District of California.

2. At all times herein mentioned, Defendant SUNBEAM is and was a Delaware corporation with its principal place of business in Boca Raton, Florida. SUNBEAM is, and at all relevant times was, registered with the California Secretary of State as doing business in California and it does business in California and in this Judicial District. Among other things, SUNBEAM is the manufacturer, designer, assembler, distributor, tester, fabricator, marketer, inspector, promoter and seller of the Oster® Accurate Blend 14 blender (hereinafter, "BLENDER").

3. At all times herein mentioned, Defendant WALMART is and was a Delaware corporation with its principal place of business in Bentonville, Arkansas. WALMART is, and at all relevant times was, registered with the California Secretary of State as doing business in California and it does business in California and in this Judicial District. The BLENDER was purchased from WALMART, located at City of Oroville, California.

4. At all times herein mentioned, DEFENDANTS, and each of them, were the agents, servants, alter egos, employees, partners, aiders and abettors, co-conspirators, joint-employers, successors-in-interest, merged entities, acquiring entities, parent corporations, subsidiaries, successors of the liability, insurers, guarantors, and/or joint venturers of each of the remaining Defendants named herein and were at all times operating and acting within the course, purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, alter ego and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining DEFENDANTS such that each of the co-defendants was and is legally responsible for the events and happenings hereinafter set forth. Each Defendant aided and abetted, encouraged, and rendered substantial assistance to the

- 2 -
Complaint

other DEFENDANTS in breaching their obligations to Plaintiff, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of herein, each of the DEFENDANTS acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is domiciled in California, and Defendants are domiciled in Delaware, Florida and Arkansas. Likewise, the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's principal and permanent place of residence is in the Northern District of California and because Defendants are subject to personal jurisdiction in the Northern District of California. Defendants have sufficient contacts because they distribute harmful products, including the BLENDER, in California.

## FACTUAL BACKGROUND

7. On or about April 13, 2017, PLAINTIFF was using the BLENDER to make hummus.

8. While the BLENDER blades were rotating during use, the pitcher detached from the threaded blade attachment and exposed the spinning blade assembly that injured PLAINTIFF. The BLENDER caused severe, permanent and disfiguring injuries to PLAINTIFF's body, including, but not limited to, lacerations of his left and right hands and fingers.

9. In order for the blade assembly to become exposed during operation, the pitcher must be unscrewed from the threaded blade attachment. Sunbeam improperly, wrongly and/or negligently relies on the consumer to correctly align the pitcher and base tabs to prevent the pitcher from rotating during use. However, this

base tabs alignment position does not prevent the BLENDER from rotating its blades, and it is only one of several operable orientations of the pitcher relative to the motor base. Nothing prevents BLENDER operation when these tabs are not aligned.

10. The BLENDER instructions do not contain any specific torque requirements, and there are no instructions and/or warnings to indicate if the base is on with sufficient torque. This means that DEFENDANTS' allowable torques are any that provide a seal that prevents leaking of the pitcher's contents.

11. During normal operation, the BLENDER'S pitcher is prone to unscrewing from the blade attachment by itself. The tendency to unscrew is due to the DEFENDANTS' chosen direction of blade rotation, which is a design defect. Torque is transmitted from the blades to the pitcher through the motion of the pitcher contents.

12. Although the amount of torque varies with the viscosity of the blended mixture, if the blade rotation were reversed, the torque on the pitcher would be in the tightening direction rather than the unscrewing direction.

13. The ease with which the pitcher unscrews from the blade attachment during normal use is a design defect, as is the reliance on the user to properly orient the pitcher relative to the motor base.

14. In addition, DEFENDANTS failed to use flat-faced tabs on the pitcher that fit into the notches in the motor base such that only one orientation would be possible for the pitcher to sit into the motor base. If the pitcher is not properly seated, the blade assembly should not engage the drive shaft in the motor base. DEFENDANTS failed to provide adequate threading for the jar nut and/or jar skirt over the blade and jar.

15. DEFENDANTS also failed to specify blade rotation to ensure that any torque applied to the pitcher will act to tighten the threaded blade attachment connection. The design was defective because the blade rotation caused the pitcher to move in the unscrewing direction, rather than the tightening direction.

16. The defective design of the BLENDER also causes shaking and vibrating during normal use with such excessive force that the pitcher unscrews from the threaded blade attachment exposing spinning blades that are harmful to users, including PLAINTIFF specifically. The power of the motor is excessive when compared to the size of the pitcher.

17. DEFENDANTS also failed to include an interlock which would have prevented the pitcher from unscrewing from the threaded blade attachment.

## FIRST CAUSE OF ACTION
## NEGLIGENCE (BY PLAINTIFF AS AGAINST DEFENDANTS SUNBEAM AND WALMART)

18. PLAINTIFF hereby incorporates by reference paragraphs 1 through 17 as if fully set forth herein.

19. Defendant SUNBEAM, at all times herein mentioned, was and is engaged in the business of marketing, designing, manufacturing, assembling, testing, inspecting, promoting, distributing, fabricating, and selling blenders, manuals, and other consumer products throughout the United States and internationally, for the sale and use by members of the public and consumers such as PLAINTIFF.

20. As part of its business, defendant SUNBEAM marketed, designed, manufactured, distributed, fabricated, tested, inspected, promoted, sold and otherwise placed into the stream of commerce the BLENDER and its manual.

21. Defendant WALMART at all times herein mentioned, was and is engaged in the business of marketing, inspecting, promoting, and selling for SUNBEAM, and engaged in such marketing, promoting, inspecting, and sales business throughout the State of California, and specifically, did routinely, in its regular course and scope of business, market, promote, inspect, and sell such above-referenced SUNBEAM products, to members of the general public and consumers such as PLAINTIFF, including the BLENDER, and did otherwise place into the stream of commerce, market, inspect, promote, and sell the BLENDER and manual.

22. At all times mentioned herein, DEFENDANTS negligently produced, manufactured, assembled, designed, tested, distributed, inspected, promoted, marketed and sold the BLENDER in a defective and dangerous condition, as described herein.

23. On or about April 13, 2017, the BLENDER malfunctioned and failed to perform properly during normal use, causing substantial and severe injuries and damages to PLAINTIFF. DEFENDANTS, and each of them, breached their duty of care to PLAINTIFF and the public by defectively designing, testing, inspecting, promoting, manufacturing, and negligently failing to warn of these defects in the BLENDER, thereby causing PLAINTIFF's damages. DEFENDANTS failed to adequately, properly, and/or timely recall or retrofit, or replace the previously manufactured, designed, and distributed BLENDER and manual. As of April 13, 2017, the model BLENDER manufactured, designed, and distributed, including the subject BLENDER, were defective and had a dangerous tendency to malfunction when PLAINTIFF specifically, and the public in general, used the BLENDER, but failed and/or refused to adequately, properly, and/or timely recall or retrofit, or replace the previously manufactured, designed, and distributed blenders, and failed and/or refused to warn PLAINTIFF and the general public of these defects.

24. DEFENDANTS were under a duty to exercise reasonable care in the BLENDER's design so that it can be safely used as intended by consumers. At all times and places mentioned herein, DEFENDANTS owed a duty to PLAINTIFF to exercise reasonable care in its design so that the BLENDER could be safely used and operated as intended. DEFENDANTS, and each of them, owed the general public and PLAINTIFF a duty to produce, design, manufacture, assemble, test, inspect, promote, distribute, sell, and otherwise place into the stream of commerce products that are safe in their intended and foreseeable use, and free from defect.

25. At all times mentioned herein, the BLENDER was sold with knowledge that it would be purchased and used without inspection of defects.

26. As a direct and proximate result of DEFENDANTS' negligence, PLAINTIFF sustained extensive economic and non-economic damages, physical injuries, past and future medical expenses, past and future and severe and ongoing emotional distress and pain and suffering, and other such damages, all in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY (BY PLAINTIFF AS AGAINST DEFENDANTS SUNBEAM AND WALMART)

27. PLAINTIFF hereby incorporates by reference paragraphs 1 through 26 as if fully set forth herein.

28. PLAINTIFF is informed and believes, and upon such information and belief alleges that at all times mentioned herein, the BLENDER, and its related components and/or materials, were defective and dangerous, in manufacture, design, sufficient instructions, and warnings, in that such defective components and/or materials of the BLENDER were likely to cause, bring about and affect a failure of the BLENDER, thereby rendering the subject BLENDER unsafe for its intended use.

29. Furthermore, PLAINTIFF is informed and believes, and upon such information and belief alleges, that certain additional components and/or materials of the BLENDER were defective in manufacture, design, sufficient instructions, and warnings, and the BLENDER was neither appropriately nor adequately tested.

30. PLAINTIFF is informed and believes, and upon such information and belief alleges that, at the time of the incident complained of, the BLENDER was in substantially the same condition as it was when it left possession of DEFENDANTS.

31. At all times and places mentioned herein, DEFENDANTS, and each of them, knew or should have known at the time said product left DEFENDANTS' possession, that said product was defective in design, manufacture, sufficient instructions, and warnings, that it did not meet users' and ordinary consumers' reasonable expectations for safety when used in a reasonably foreseeable manner, and

was dangerous, defective, unfit, and unsafe for its intended use and that said conditions were likely to cause and bring about a failure and malfunction of the BLENDER when used in a foreseeable manner, and not properly and adequately tested or inspected.

32. PLAINTIFF is informed and believes, and upon such information and belief alleges that, the BLENDER had associated deficits, risks, and defects, including, but not limited to, the defectively designed motor, pitcher, base, jar nut, alleged safety features, and/or its lack of sufficient warnings and/or use instructions. Moreover, DEFENDANTS failed to adhere to industry standards regarding the design, testing, distribution, and manufacturing process, amongst others, and failed to incorporate in the BLENDER' defective design, a properly functioning mechanism which could have averted PLAINTIFF's injuries and damages.

33. These deficits, risks, and defects were known or certainly knowable by DEFENDANTS via the use and employ of scientific knowledge available at the time of design, manufacture, testing, and distribution of the BLENDER.

34. The associated risks, deficits, and defects of the BLENDER presented a substantial danger to users of the products and ordinary consumers would not have recognized the associated risks, deficits, and defects.

35. DEFENDANTS, and each of them, further failed to adequately warn of the potential risks and hazards associated with the BLENDER when used as intended and/or foreseeably misused. This lack of sufficient instructions and/or warnings was a substantial factor in causing the failure of the BLENDER and, consequently, bringing about PLAINTIFF's damages.

36. At the times and places mentioned herein, DEFENDANTS, and each of them, knew or should have known that said BLENDER was defective in its instructions, warnings, design, and manufacture, likely to perform unsafely in a manner unanticipated by a prudent user, and having such knowledge, DEFENDANTS, and each of them, should have used reasonable care to warn, or give

adequate use instructions and warning of the BLENDER's defects and deficits in design and operational characteristics to those intending to use the BLENDER in the manner in which it was intended to be used.

37. At all times and places mentioned herein, DEFENDANTS failed to use reasonable care to warn, give adequate instructions or warnings to provide facts describing the BLENDER's dangerous propensities to those whom they could expect to use the product or be endangered by its use, and such deficits and defects as illustrated hereinabove were a substantial factor in causing PLAINTIFF's damages. The foreseeable risks of failure associated with the design of the BLENDER outweigh the benefits associated with the BLENDER.

38. The BLENDER was further defective due to inadequate warnings or use instructions because DEFENDANTS, and each of them, knew or should have known that the defectively designed BLENDER created a high risk of failure and resulting harm. DEFENDANTS failed to adequately and timely warn consumers of the risk.

39. On or about April 13, 2017, while the BLENDER was being used in a reasonably foreseeable manner and for the purpose for which it was intended, by reason of the defective conditions thereof, and as a legal and proximate result thereof, the BLENDER failed to perform properly.

40. As a proximate result of the defects referenced hereinabove, the failure to use reasonable care to warn or give adequate use instructions and/or warning of the defective condition and dangerous characteristics of the BLENDER when used in intended manner, PLAINTIFF sustained extensive past and future economic and non-economic damages, physical injuries, past and future medical expenses, past and future and severe and ongoing emotional distress and pain and suffering, and other such damages, all in an amount to be proven at trial.

///

///

///

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY (BY PLAINTIFF AS AGAINST DEFENDANTS SUNBEAM AND WALMART)

41. PLAINTIFF hereby incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42. PLAINTIFF used the BLENDER manufactured, designed, assembled, promoted, distributed, or sold by SUNBEAM and WALMART.

43. PLAINTIFF hereby alleges that the BLENDER was not of the same quality as those generally acceptable in the trade, was not fit for the ordinary purposes for which such products are used, was not adequately labeled as such and did not measure up to the promises or facts stated in the sales literature and communications by and from DEFENDANTS.

44. DEFENDANTS impliedly warranted that the BLENDER, which DEFENDANTS designed, manufactured, assembled, promoted, distributed, and sold was merchantable, fit and safe for ordinary use.

45. DEFENDANTS further impliedly warranted that the BLENDER which DEFENDANTS marketed, designed, manufactured, assembled, tested, inspected, promoted, distributed, fabricated, and sold was fit for the particular purposes for which it was intended and sold.

46. Contrary to these implied warranties, the BLENDER was defective, unmerchantable, and unfit for its ordinary use when sold, and unfit for the particular purpose for which it was sold.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff NOEL COGBURN prays for judgment against DEFENDANTS, and each of them, as follows:

(a) Compensatory and general damages, including, but not limited to, damages for past and future medical expenses, incidental expenses, physical pain and suffering, mental anguish and emotional distress, disfigurement, medical expenses,

loss of enjoyment of life, loss of earnings and earning capacity, and any other compensatory damages, for each count alleged in the Complaint;

    (b)    Pre- and post-judgment interest on all damages as allowed by the law;

    (c)    Attorneys and expert/consultant fees under existing law;

    (d)    Costs of suit; and

    (e)    Such other and further relief as the Court deems just and proper.

DATED: May 14, 2018        **KP LAW**

By: _____
Aghavni V. Kasparian
Attorneys for Plaintiff
**NOEL COGBURN**

## JURY DEMAND

PLAINTIFF requests a trial by jury on all issues so triable.

DATED: May 14, 2018        **KP LAW**

By: _____
Aghavni V. Kasparian
Attorneys for Plaintiff
**NOEL COGBURN**